[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 42, and the defendant husband, 50, married on June 10, 1978 at Los Angeles, California. Two children, Elizabeth Anne, born March 30, 1982 and John Thomas, born October 24, 1984 have been born to the plaintiff issue of the marriage. Both parties had resided in Connecticut for more than one year prior to the start of this dissolution action which was served on the defendant on October 14, 1993. CT Page 1431-E
The plaintiff experienced an initial onset of multiple sclerosis in November, 1991 and has had subsequent exacerbations in December, 1993 and November, 1994. During these episodes she has experienced partial paralysis, eyesight impairment, slurred speech, muscle spasms and fatigue. Expert medical testimony confirmed the plaintiff's condition.
The plaintiff's employment career began with an advertising firm after she had completed about 2-1/2 years of college at the UCLA extension in Westwood, California. She was self-supporting from high school graduation. The plaintiff continued to work until her older child's birth.
She and the defendant had purchased a home in 1979 which they sold while building a new house which was completed in December, 1985.
After a stint in the service, two years as a free lance magazine writer and one year as a newspaper reporter, the defendant became employed by Hill Knowlton in November, 1972 as CT Page 1431-F an account executive. He became General Manager of the Los Angeles office shortly after marrying the plaintiff. In 1986 he was named President of the company's U.S.A. operations, dictating relocation to Connecticut.
A relocation company purchased the parties' home thereby facilitating the defendant's transfer. The family rented for 8 months until their North Street, Greenwich house was purchased in June, 1987 for $885,000.00, subject to a $560,000.00 mortgage. Three years later, the plaintiff launched a major renovation of the house which was originally budgeted at $450,000. When substantially completed, the cost was $938,000.00. The defendant liquidated much of the family investments and savings to continue to meet the escalating costs. The defendant's explanation, accepted by the court, was his trust in the plaintiff's judgment, since she had successfully supervised the construction of the California house. The Greenwich project ended in disaster when the North Street property sold in May, 1994 with net proceeds, now escrowed, of $580,088.00.
The defendant's career flourished, reaching the position of CT Page 1431-G C.E.O. for two years. British interests acquired ownership of the corporation, resulting in the defendant's shift to Executive Vice President. The change reduced the defendant's $427,000.00 package of salary, bonus and annuity to $275,000.00 without bonuses. The defendant is presently employed pursuant to an employment agreement dated March 1, 1994 (Defendant's Exhibit I), which expires the end of February, 1995.
The defendant devoted many weekends and evenings to writing his initial book which has been published in both hard cover and paperback (Plaintiff's Exhibit #9 and #10). Through the efforts of his literary agent, the work "St. Agnes' Stand" has been promoted for a possible motion picture or television production (Plaintiff's Exhibit #13), as well as for "audio work" (Plaintiff's Exhibit #14) and condensation by Reader's Digest (Plaintiff's Exhibit #15, #16, #17 and #18). The book has also been licensed for publication in several foreign languages. The court concludes that the defendant's manuscript has been well received in the market.
The defendant has completed a second book "The Last Ride" CT Page 1431-H which is presently being promoted. In 1994 the defendant received $72,000.00 for "St. Agnes' Stand" and $15,000.00 for "The Last Ride".
The plaintiff was employed from February 1992, until May, 1993 as bookkeeper by Christ Church Parish, in Greenwich, initially at $18,000.00 annually and increased to $21,000.00. The plaintiff then began Rachel Eidson International to conduct etiquette classes (Defendant's Exhibit B), but after sustaining an $11,000.00 loss in 1993, she no longer pursues this endeavor.
The parties separated for 6 months but reconciled on June 15, 1993.
The causes of the breakdown of the marriage remain somewhat clouded. The plaintiff dredged up a 1979 episode that occurred in Japan. The plaintiff claimed the defendant hit her. The defendant, according to the plaintiff, was not comporting herself as a lady. The defendant admits the argument but denied striking the plaintiff. The court finds this allegation irrelevant to the eventual breakdown. CT Page 1431-I
The court finds the episode involving the daughter's dismay in finding notes made by the defendant equally irrelevant. The daughter found these notes while rummaging through the defendant's private papers. The plaintiff never discussed the episode with the defendant nor did she address her daughter's upset. Instead, the plaintiff suggested to her daughter that she talk to the defendant about these notes.
The defendant's absorption in his work and writing, leaving the plaintiff to tend to the house projects, contributed to the breakdown. The defendant's allegations that the plaintiff encouraged the unnecessary attentions paid to her by contractors also contributed. A general lack of communication appears to have resulted.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered dissolving the parties' marriage on the ground of irretrievable breakdown. CT Page 1431-J
2. The plaintiff is awarded custody of the two minor children and the defendant shall have liberal visitation rights.
3. The defendant shall pay to the plaintiff the sum of $8,500.00 monthly as unallocated periodic alimony and child support until the death of either party or the plaintiff's remarriage.[1]
4. The defendant shall pay to the plaintiff, as additional periodic alimony, with the same limitations as set out supra, 25% of all net revenues that he receives after March, 1995 from the book "St. Agnes' Stand". Net revenues are net agent's fees, publicist fees, and other contracted expenses incurred in promotion of the book. The defendant shall provide the plaintiff with an affidavit accounting for the revenue. Payment shall be made on March 1 of each year.
5. The defendant shall retain the "Last Ride" as his sole property.
6. The defendant shall maintain $800,000.00 life insurance CT Page 1431-K with the plaintiff as beneficiary for one-half and the 2 children as primary beneficiaries for the remaining half. The plaintiff's portion shall remain in force so long as the alimony order remains in force or until the defendant attains 60 years of age. The same premiums paid for the coverage at age 59 shall be paid each succeeding year buying whatever principal value can be purchased. This attempts to recognize the rapid acceleration that occurs to premiums after age 59. The children's portion shall be maintained so long as child support is payable.
7. The defendant shall retain ownership of the New York Insurance Policy that was established for the children's college education.
8. The court orders transfer of 50% of the Hill and Knowlton Retirement Funds, listed as $586,818.00, to the plaintiff. The plaintiff's counsel shall prepare appropriate QDRO orders for the court's signature.
9. The defendant shall retain his Shawmut Bank account, ESOP account, his IRA's and his defined benefit pension as his sole CT Page 1431-L property.
10. The plaintiff shall retain her bank account and her IRA as her sole property.
11. The proceeds of the North Street real estate sale shall be divided by paying therefrom 60% to the plaintiff and 40% to the defendant
12. The defendant shall pay the plaintiff an allowance to prosecute of $30,000.00 for litigation expenses and $2,000.00 for expert witness fees, payment to be made from the defendant's share of the aforesaid proceeds.
13. The husband shall maintain his present medical and hospitalization insurance for the benefit of the children until they graduate from high school or attain age 19 whichever event first occurs. The parties shall share equally all unreimbursed medical, dental and orthodontia expenses. Neither party shall incur a nonemergency expense without the consent of the other party which consent shall not be unreasonably withheld. The CT Page 1431-M husband shall assist the wife to the best of his ability in obtaining the COBRA conversion forms and she shall be responsible for the monthly premium.
14. Each party shall retain all items of personal property presently in his or her respective possessions.
15. The wife shall immediately return possession of the 1990 Mercedes station wagon to the husband since this vehicle is provided to the husband by his employer.
16. Each party shall be responsible for reporting 50% of the sales proceeds and paying any taxes owed thereon in connection with the sale of their Greenwich residence.
17. Each party shall be solely responsible for the liabilities listed on their respective Financial Affidavits. Counsel for the plaintiff shall prepare judgment file.
HARRIGAN, J.